[No. 34801. Department One. April 16, 1959.]

LOUIS J. NEESER *et al., Respondents,* v. B. L. MARTIN *et al., Appellants.*[1]

¹Reported in 337 P. (2d) 1065.

*Noland & Disque* (*Boardman Noland*, of counsel), for appellants.

*Robert J. McKanna,* for respondents.

HUNTER, J.—This is an action for the recovery of an alleged overpayment of money upon a written agreement.

Louis J. Neeser, a building contractor, borrowed $40,000 from B. L. Martin, a hardwood flooring contractor and wholesaler, for use in financing the cost of constructing an apartment house which Neeser proposed to build. On January 16, 1956, a written agreement was entered into between the parties, providing that Neeser execute a note in the amount of the loan, payable within six months with six per cent interest secured by a first real-estate mortgage upon the property; that Martin was to receive three per cent of the loan as a service charge, and twelve per cent interest on any payments due after the first six-month period, with the further provisions in paragraph No. 4 of the agreement as follows:

"It is understood and agreed between both parties that B. L. Martin shall assist the parties of the first part in securing materials and sub-contracts and any other work that is mutually agreed by both parties. For these services rendered the parties of the first part shall pay to the parties of the second part the sum of Two Thousand Four Hundred and No/100ths Dollars ($2,400.00) for each six month period that this agreement is in full force and effect. The said $2,400 payment shall be due the parties of the second part as such time as this mortgage is paid in full."

The note and mortgage were executed on January 16, 1956. The loan was not made available until March 28, 1956, for reasons with which we are not concerned in this appeal.

The building was completed by the end of the first six-

month period, with the exception of some of the painting and interior finishing. It was sold on July 17, 1956, and the cost of completion of the building was financed therefrom. The final construction was completed about September 1, 1956. A dispute arose between the parties as to the money due Martin for his services after the first six-month period. Martin refused to release the mortgage unless payment of $2,400 was made for the second six-month period.

On October 9, 1956, payment was made in full under the agreement as it was construed by Martin. Louis J. Neeser and wife, plaintiffs, thereafter instituted this action against the defendants, B. L. Martin and wife, for overpayment and damages. (For convenience, we will hereafter refer to the respective parties in the singular.)

The only item with which we are concerned in this appeal is the alleged overpayment of $2,400 to the defendant for his services, after the first six months, under paragraph No. 4 of the agreement. In its findings of fact, the trial court found in part as follows:

"VI. That all of the sub-contracts were obtained and all of the assistance contemplated within the terms of the contract to be furnished by the defendant was furnished on or before July 16, 1956."

"VIII. Defendant did not perform any service or render any assistance to the plaintiff within the contemplation of the agreement after the 16th day of July, 1956."

From the foregoing findings of fact, the court concluded the plaintiff was entitled to recover the $2,400 from the defendant, and judgment was entered in plaintiff's favor with an additional item for an overpayment of interest in the amount of $99.57. The defendant appeals, there being no controversy, however, as to the latter item.

Appellant raises only one issue by his assignments of error. Was the appellant entitled to $2,400 for his services rendered after the first six-month period?

Appellant contends that, as one of the considerations for the loan under the agreement, it was the intention of the patries that respondent *was to employ the appellant as assistant in the construction* of the building, for

which he was to be paid $2,400 for each six-month period, irrespective of services rendered. We disagree. Paragraph No. 4, *supra,* limits the employment of Martin to *assisting in securing materials and sub-contracts and any other work that is mutually agreed upon by both parties.* The agreement expressly specifies the services to be performed and that payment is to be made for those services rendered.

In his oral opinion, the trial judge makes the following analysis of the contract on this issue:

"The evidence shows that the full twelve percent is charged for this loan from the inception, namely, because the note provided for six percent and three percent bonus or service charge for six months would be another six percent, and that would make a total of twelve percent. The note itself provides that it is due in six months, and thereafter the payment due on principal or any other payment not made, and also any payment provided in the contract, would bear interest at the rate of twelve percent.

"So the question is then, first of all, is the provision relating to the $2400 under Paragraph IV a mere subterfuge, or is it for services rendered. It must be either one or the other. If it is not for services rendered, then it would constitute usury, because it would be over and above the twelve percent. . . . "

We cannot assume that the appellant and respondent intended to be parties to a usurious agreement. We find nothing in their testimony indicating it was their intention that this provision in the contract be a subterfuge for payment of interest in excess of the maximum legal rate of twelve per cent. We are convinced, in considering the contract as a whole, as did the trial court, that in the light of the express language of paragraph No. 4, *supra,* the parties intended the $2,400 to be paid for each six-month period for services actually performed as specified in the contract.

The appellant finally contends, however, that he performed the following services in the second six-month period, which are specified in the contract: he persuaded the painting contractor to stay on the job after July 16, 1956, by guaranteeing payment to him for completion of his contract; he obtained finishing lumber, hardwood flooring, and

aluminum thresholds, essential for the completion of construction. All of this testimony is in dispute.

The court was entitled to believe from testimony in the record: (1) The guarantee to the painting contractor was made prior to July 16, 1956; (2) the finishing lumber was a part of the dry wall contract which had been let prior to July 16; (3) the hardwood flooring and aluminum thresholds were a part of the flooring contract with the Southern Hardwood Company, the appellant's company, which was arranged for prior to July 16. In its oral decision, the trial court stated:

" . . . As I have already stated, it actually in my opinion terminated because the *subcontracts and the materials were already arranged for* by that time [July 16, 1956]. (Italics ours.)

We are satisfied there is substantial evidence in the record to support the trial court's finding of fact No. VIII, *supra*, that no services were performed by appellant within the contemplation of the contract after the first six-month period. We will not substitute our judgment for that of the trial court on a disputed factual issue. *Wise v. Farden*, 53 Wn. (2d) 162, 332 P. (2d) 454 (1958).

The trial court was correct in awarding the respondent judgment against the appellant in the amount of $2,400 as an overpayment for his services performed under their agreement.

The judgment is affirmed.

WEAVER, C. J., DONWORTH, OTT, and FOSTER, JJ., concur.